Argued and submitted February 5, reversed June 3, 1980

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL DENNIS SPENCER,
*Petitioner.*

(No. B47-427, CA 13453, SC 26493)

611 P2d 1147

David J. Phillips, Staff Attorney, Public Defender Services of Lane County, Inc., Eugene, argued the

cause for petitioner. With him on the briefs was Elizabeth A. Baldwin, Eugene.

Ronald J. Sticka, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Linde and Peterson, Justices.

DENECKE, C. J.

## DENECKE, C. J.

This case presents questions concerning the constitutionality of the Oregon disorderly conduct statute, ORS 166.025. The statute defines eight types of disorderly conduct. Petitioner/defendant was arrested and charged with a violation of § (1)(c), which provides:

"(1) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"* * * * *;

"(c) Uses abusive or obscene language, or makes an obscene gesture, in a public place; * * *."

The criminal complaint states:

"The above-named defendant is accused by this Complaint of the crime of Disorderly Conduct committed as follows:

"The defendant on or about the 3rd day of August, 1978, in the county aforesaid, did unlawfully fully and recklessly create a risk of public inconvenience, annoyance and alarm by using abusive and obscene language in a public place, on 14th Street at or near B Street, Springfield, Oregon; contrary to statute and against the peace and dignity of the State of Oregon."

Defendant filed a demurrer, in which he attacked the constitutionality of ORS 166.025(1)(c) "on its face." The demurrer cites numerous constitutional defects in the statute.[1] The trial court sustained the demurrer. The Court of Appeals reversed and

---

[1] The exact number of constitutional claims lurking in the defendant's briefs cannot be determined with absolute certainty, since none of the briefs filed by either party included "[a] succinct and clear summary of the arguments appearing in the body of the brief," nor were assignments of error "clearly and succinctly stated under a separate and appropriate heading," as required by Rules 7.17 and 7.19 of the Oregon Rules of Appellate Procedure. To the extent that clearly stated arguments command the attention of the court, litigants could present their claims more forcefully, as well as make the task of the court much easier, by following the rules cited above.

remanded for trial in a *per curiam* opinion, citing *State v. Donahue,* 39 Or App 79, 591 P2d 394 (1979).[2] We allowed review. We reverse the decision of the Court of Appeals.

Defendant contends that the language defining the offense is unconstitutionally vague and overbroad, in that it could deter citizens from exercising their rights of free expression guaranteed by the federal first amendment[3] and by Art I, § 8 of the Oregon Constitution. Although both parties to this case frame their arguments in the rhetoric of first amendment jurisprudence, we will first consider the state constitutional claims. Our determination that ORS 166.025(1)(c) deprives the defendant of liberties secured by Art I, § 8 obviates any need to reach the first amendment question. *Deras v. Myers,* 272 Or 47, 53, 535 P2d 541 (1975).[4]

Art I, § 8 of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

■ This constitutional provision is a prohibition on the legislative branch. It prohibits the legislature from enacting laws restraining the free expression of opinion or restricting the right to speak freely on any subject. If a law concerning free speech on its face violates this prohibition, it is unconstitutional; it is not necessary to consider what the conduct is in the individual case. If the law is not unconstitutional on its face, it nevertheless might be applied in a manner

---

[2] Judge Roberts dissented, on grounds that the terms "abusive or obscene language," as used in § (1)(c), are unconstitutionally vague and overbroad.

[3] "Congress shall make no law * * * abridging the freedom of speech * * *."

[4] On the hierarchy of state and federal constitutional claims see, generally, Linde, *Without Due Process: Unconstitutional Law in Oregon,* 49 Or L Rev 125, 131-35 (1970).

that would violate Art I § 8. In this case the nature of the alleged conduct of the defendant is unknown to us and the question is whether the law on its face violates Art I, § 8.

The statute makes the expression or the speaking of certain kinds of language criminal if done intentionally or recklessly to cause "public inconvenience, annoyance or alarm" and in a public place. However, the statute does not require that the words spoken actually cause "public inconvenience, annoyance or alarm." The statute makes the speaking of the words themselves criminal, if spoken with the requisite intent, even if no harm was caused or threatened.

With this dissection of the statute it is apparent that the law does restrain freedom of expression of opinion and restricts the right to speak.

We recently had before us a similar problem in a challenge to a statute that defined the crime of "harassment" to include any communication, made with the same mental elements, "in a manner likely to cause annoyance or alarm." *State v. Blair,* 287 Or 519, 601 P2d 766 (1979). That statute also was directed at the act of communicating. The harassment law was somewhat more restrictive in that it required at least a likelihood of "annoyance or alarm," which the present law does not. Nevertheless, we held the statute unconstitutional because of the vagueness of its terms. We did not decide the defendant's free expression claim; however, we said:

> "* * * No doubt the difficulty is sharpened by the fact that ORS 166.065(1)(c) expressly makes the gravamen of the offense that the offender *communicates* rather than that he subjects the victim to some defined injury, of which the communication is only the means employed in the particular case. A statute that does not in its own terms forbid speech or other communication still would require sensitive confinement within constitutional limits, but it is less vulnerable to constitutional attack on its face." 287 Or at 523.

The same shortcoming applies to the present statute, ORS 166.025. It is directed at the expression or the speech. There may be types of "expression" that would not be within the protection of Art I, § 8 under any imaginable circumstances. But when the terms of a statute as written prohibit or restrain expression that does come within this protection, the statute is a law forbidden by Art I, § 8.

The state contends that abusive and obscene language are types of expression or speech that are not protected by Art I, § 8.

The disorderly conduct statute does not define abusive or obscene language. The state contends that the meaning of these words can be discerned by the definition of obscenity in ORS 167.060(7), relating to obscenity and related offenses, or by common understanding. ORS 167.060(7) provides:

> " 'Obscenities' means those slang words currently generally rejected for regular use in mixed society, that are used to refer to genitals, female breasts, sexual conduct or excretory functions or products, either that have no other meaning or that in context are clearly used for their bodily, sexual or excretory meaning."

Assuming that definition is applicable to the disorderly conduct statute, the mere speaking of such words is not excluded from the protection of Art I, § 8.

■ Whether words commonly regarded as obscene fall within or without the protection of the constitutional protection of expression depends upon the circumstances in which the words are used. The utterance of words which are commonly regarded as obscene is not constitutionally protected if, among other requirements, "the dominant theme of the material [words] taken as a whole must appeal to a prurient interest in sex." *State v. Childs,* 252 Or 91, 95-96, 447 P2d 304 (1969). In *Cohen v. California,* 403 US 15, 20, 91 S Ct 1780, 29 L Ed2d 284, reh den 404 US 876, 92 S Ct 26, 30 L Ed2d 124 (1971), the court stated the

same proposition: "Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic."

In *State v. Blair, supra,* 287 Or at 523, with this distinction in mind, we stated: "* * * freedom of speech does not exclude expressions that are 'offensive' or 'obscene' in the sense of vulgar."

■    We conclude that the legislature did not intend the phrase, "obscene language," as used in the disorderly conduct statute, to be limited to words whose dominant theme appeals to a prurient interest in sex. That the phrase is in a disorderly conduct statute and that there are a number of other statutes making criminal various aspects of obscenity as that word is used in its erotic sense, supports this conclusion.

■    We hold that ORS 166.025(1)(c) is void as contrary to Art I, § 8 of the Oregon Constitution.

The decision of the Court of Appeals is reversed and the order sustaining defendant's demurrer is reinstated.